UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SYMMETRY PRODUCTS GROUP,

08 CV 3183

JUDGE BATTS

Civil Action No.

                    Plaintiff,

        -against-

IRON WORKS LOCAL UNION NO. 417, IRON
WORKS LOCALS 40, 361 & 417 UNION
SECURITY FUNDS,

                    Defendant.

------------------------------------------------------------X

VERIFIED
PETITION
FOR REMOVAL



MAR 31 2008

U.S.D.C. S.D.N.Y.
CASHIERS

To the Judges of the United States District Court for the Southern District of New York:

1.      On or about March 7, 2008, an action was commenced by the plaintiffs against the defendants by Notice of Amended Petition and Amended Verified Petition in the Supreme Court of New York, New York County, entitled SYMMETRY PRODUCTS GROUP, IRON WORKS LOCAL UNION NO. 417, IRON WORKS LOCALS 40, 361 & 417 UNION SECURITY FUNDS (FUNDS), Index Number 103545/08. A copy of the Notice of Amended Petition and Amended Verified Petition and Memorandum of Law are attached hereto as Exhibit "A". Upon information and belief, said Exhibit "A" constitutes all pleadings and orders filed to date in said action.

2.      The time for answering or otherwise pleading to the above-described action has not yet expired.

3.      Defendants, IRON WORKERS LOCAL UNION NO. 417, IRON WORKERS LOCALS 40, 361 & 417 UNION SECURITY FUNDS, incorrectly sued herein as IRON WORKS LOCAL UNION NO. 417, IRON WORKS LOCALS 40, 361 & 417 UNION SECURITY FUNDS are apparently being sued to vacate an Arbitration Award issued against SYMMETRY.

4.     IRON WORKERS LOCAL UNION NO. 417 ("UNION"), is a labor organization in an industry affecting commerce within the meaning of Section 2(5) the National Labor Relations Act (N.L.R.A.), as amended, 29 U.S.C. §152(5), with its principal offices located at 583 Route 32 Wallkill, New York 12590.

5.     The IRON WORKERS LOCALS 40, 361 & 417 UNION SECURITY FUNDS ("FUNDS") are Union Security Funds within the meaning of Section 2 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1002, with its principal offices located at 451 Park Avenue South, New York New York 10016.

6.     The plaintiff, SYMMETRY PRODUCTS GROUP ("SYMMETRY") is an employer engaged in an industry affecting commerce within the meaning of Section 2 of the N.L.R.A., as amended, 29 U.S.C. §152.

7.     This action involves the interpretation of a collective bargaining agreement and seeks injunctive and compensatory relief and is one over which this Court has original jurisdiction, under the provisions of Labor Management Relations Act §301(a), 29 U.S.C. 185(a), Clayton Antitrust Act §6, 20, 15 U.S.C. §§12-27, Norris-La Guardia Act (Anti- Injunction) Act §§2-14, 29 U.S.C. §§105-115 and is one which may be removed to this Court by defendants pursuant to the provisions of 28 U.S.C. §§1441 et seq.

8.     Attached to this Petition as Exhibit "B" is a copy of the "Notice of Filing of Petition for Removal of Cause to the Unites States District Court for the Southern District that will be served contemporaneously herewith upon SYMMETRY and filed with the Clerk of the Supreme Court, New York County.

WHEREFORE, for the above reasons, the defendants ask that this action, pending against it in the Supreme Court of New York, New York County, be removed therefrom to this Court and for such other and further relief as to this Court seems just, equitable and proper.

2

Dated:  Garden City, New York
          March 31, 2008

                                        Respectfully submitted,

                                        COLLERAN, O'HARA & MILLS L.L.P.

                                        By: _____
                                            DENIS A. ENGEL (DAE-7796)
                                            Attorneys for Plaintiff
                                            1225 Franklin Avenue, Suite 450
                                            Garden City, New York 11530
                                            (516) 248-5757

3

## VERIFICATION OF PETITION FOR REMOVAL

STATE OF NEW YORK)
                          ) ss.:
COUNTY OF NASSAU )

DENIS A. ENGEL, of lawful age, being sworn upon his oath says that he is an attorney for Defendants herein, that he has prepared and read the foregoing Verified Petition for Removal, and the matters and things contained therein are true as he verily believes.

DENIS A. ENGEL (DAE-7796)

Subscribed and sworn to before me
this 31st day of March, 2008

NOTARY PUBLIC

LAURA A. HARRINGTON
Notary Public, State of New York
No. 01HA5036137
Qualified in Nassau County
Commission Expires 11-27-10

4



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

SYMMETRY PRODUCTS GROUP,

        Petitioner,

   and

IRON WORKS LOCAL UNION NO. 417, IRON
WORKS LOCALS 40, 361 and 417 UNION
SECURITY FUNDS,

        Respondents.

Index No.:

**103545/08**

**NOTICE OF PETITION**
*AMENDED*

**RECEIVED**

MAR 0 7 2008

IAS MOTION
SUPPORT OFFICE

PLEASE TAKE NOTICE, that upon the Verified Petition of Thomas M. Lancia, Esq.,
application will be made on April 2, 2008, at 9:30 ~~10:00~~ A.M. in the Supreme Court of the State of
New York, New York County, before the ~~Hon.~~ SUBMISSION PART ROOM 130 ~~JSC~~., for
vacation of the Arbitration Award of Eric J. Schmertz dated December 5, 2007 pursuant to
Article 75 of the New York Civil Practice Law and Rules.

PLEASE TAKE FURTHER NOTICE that Respondents are required to serve Verified
Answer upon the Petitioners' attorneys at least five (5) day prior to the return date of this
Petition.

Dated: New York, New York
     March 7, 2008

THOMAS M. LANCIA PLLC

Thomas M. Lancia, Esq.
*Attorney for Petitioner SYMMETRY PRODUCTS
GROUP*
217 Broadway, Suite 608
New York, New York 10007
(212) 964-3157

-1-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

SYMMETRY PRODUCTS GROUP,

        Petitioner,

        and

IRON WORKS LOCAL UNION NO. 417, IRON
WORKS LOCALS 40, 361 and 417 UNION
SECURITY FUNDS,

        Respondents.

Index No.: 103545/08

**AMENDED VERIFIED PETITION**

The Petitioner, SYMMETRY PRODUCTS GROUP ("Petitioner"), hereby alleges as follows:

1.     Petitioner is a corporation duly incorporated and doing business in the state of Rhode Island.

2.     Respondents are IRON WORKS LOCAL UNION NO. 417 (the "Union"), of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Works (affiliated with the ALF-CIO), of Newburgh, New York, whose mailing address is 583 Route 32, Wallkill, NY  12589, and IRON WORKS LOCALS 40, 361 and 417 SECURITY FUNDS ("Funds") ("Respondents"), which are established by a collective bargaining agreement ("CBA") between the Fabricators and Erectors Association, Inc. and Respondents (collectively, "Parties") and attached herewith as Exhibit 1.

3.     In February 2007, the Union mailed an agreement to Petitioner to be executed by an employer agreeing to abide by the terms and conditions of employment set forth in the CBA.

4.     On or around February 21, 2007, Gloria Fournier, a secretarial employee of Petitioner, executed the agreement without the authority of Petitioner. A copy of that agreement is attached herewith as Exhibit 2. The affidavit of Gloria Fournier is attached herewith as Exhibit 5.

5.      Section 23(e) of the CBA provides that disputes based upon the failure of an Employer to make payments to the Funds shall be submitted by the Parties to the CBA for final and binding arbitration to Eric J. Schmertz ("Mr. Schmertz") as an Impartial Arbitrator.

6.      On December 5, 2007, Mr. Schmertz awarded the sum of $63,041.26 to Respondents based on an allegation that Petitioner violated the CBA by failing to employ Union employees at a jobsite for a Kiryas Joel School.

7.      Section 7511(b)(2) of the New York Civil Practice Law and Rules ("CPLR") provides, in pertinent part:

> The award shall be vacated on the application of a party who neither participated in the arbitration nor was served with a notice of intention to arbitrate if the court finds that:…
>
> (ii) a valid agreement to arbitrate was not made.

8.      Upon information and belief, Petitioner never received a notice of intention to arbitrate pursuant to Section 7503 of the CPLR.

9.      Petitioner did not participate in the arbitration of December 5, 2007.

10.     Upon information and belief, there is no valid agreement to arbitrate between the Parties.

11.     Upon receiving a Demand with Award, Steven Lancia ("Mr. Lancia"), the president of Petitioner, contacted Colleran, O'Hara & Mills LLP, the firm representing Respondent, to discuss negotiating the terms of the award and it was agreed between Mr. Lancia and Denis Engel, an associate of that firm, that there would be no pursuit of judgment on the award and that the parties would attempt to resolve the dispute between themselves. The affidavit of Steven Lancia is attached herewith as Exhibit 6.

12.    Despite this representation by Mr. Engel, Petitioner has been informed that Colleran, O'Hara & Mills LLP intend to move forward in obtaining a judgment against Petitioner for the Award.

13.    Petitioner has been prejudiced by the misrepresentation by Mr. Engel that the Award would not be confirmed, but that the parties would negotiate to resolve the dispute.

14.    No prior application for the relief sought herein has been made before this or any other Court.

Dated: New York, New York
      March 21, 2008

                    THOMAS M. LANCIA PLLC

                    Thomas M. Lancia, Esq.
                    *Attorney for Petitioner SYMMETRY*
                    *PRODUCTS GROUP*
                    217 Broadway, Suite 608
                    New York, New York  10007

STATE OF NEW YORK      :
                       :s.s.
COUNTY OF NEW YORK  :


THOMAS M. LANCIA, an attorney duly admitted to practice before the courts of this state affirms under penalty of perjury the follows:

That is the attorney for the Petitioner herein.  That he has read the foregoing Verified Petition and knows the contents thereof and knows it to be true except as to matters therein stated to be alleged upon information and belief and as to those matters he believes it to be true.

That the reason this verification is made by the deponent and not by the Petitioner is that the Petitioner is a corporation organized under the laws of Rhode Island and operating in the state of New York as a foreign corporation.

The source of your affirmant's information and the grounds of his belief are documents and records in affirmant's possession and reports obtained by affirmant.


THOMAS M. LANCIA, ESQ.

**Exhibit 1**

AGREEMENT

between

FABRICATORS AND ERECTORS

ASSOCIATION, INC.

and

LOCAL UNION NO. 417

of the

INTERNATIONAL ASSOCIATION

OF BRIDGE, STRUCTURAL, ORNAMENTAL

AND

REINFORCING IRON WORKERS

AFL-CIO

Newburgh, New York

The mailing address is:

583 Route 32, Wallkill, New York

12589

Telephone:

(845) 566-8417

FAX:

(845) 566-9420

## AGREEMENT

THIS AGREEMENT, is made and entered into effective as of the 1st day of May, 2006, by and between FABRICATORS AND ERECTORS ASSOCIATION, INC. (hereinafter referred to as the "Association"), including its successors or assigns, for and on behalf of its members (see Schedule "A") (hereinafter referred to jointly and individually as the "Employer"), and any companies that may hereinafter become members of the Association, and LOCAL UNION NO. 417, of the INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL AND REINFORCING IRON WORKERS (affiliated with the AFL-CIO), of Newburgh, New York, whose mailing address is 583 Route 32, Wallkill, NY 12589 (hereinafter referred to as the "Union").

This Agreement shall be effective in all places where work is to be performed or is being performed by the "Employer" or by any person, firm or corporation owned or financially controlled by that "Employer" and covers the work coming under the jurisdiction of the "Union".

1

## Section 1. PREAMBLE

This Agreement is entered into through collective bargaining to prevent strikes and lockouts and to facilitate peaceful adjustment of grievances and disputes between the Employer and Union in this trade and to prevent waste, unnecessary and avoidable delays and expenses and, so far as possible to provide for labor's continuous employment. Such employment to be in accordance with conditions herein set forth and wages herein agreed upon; also, in that stable conditions may prevail in the building industry and building costs may be as low as possible, consistent with fair wages and conditions and further, the establishment of the necessary procedures by which these ends may be accomplished.

The Local Union shall not enter into a contract with any other party on terms more favorable than the provisions contained herein unless such more favorable terms shall inure to the benefit of all other signatory employers for the period and type of job for which the more favorable term is entered.

## Section 2. CRAFT JURISDICTION

It is agreed that the jurisdiction of work covered by this Agreement is that provided for in the charter grant issued by the American Federation of Labor to the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, it being understood that the claims are subject to trade agreements to which the International Association is a party as well as the decisions and awards rendered by the Nation Joint Board for the Settlement of Jurisdictional Disputes with respect to all jurisdictional disputes which may arise under this Agreement. Such disputes shall not be subject to the grievance and arbitration procedures set forth in Section 44 herein.

The classification of work covered by this Agreement shall include, but not be limited to:

This International Association claims for its members the fabrication, production, erection and construction of all iron, steel, ornamental lead, bronze, brass, copper, aluminum, the installation of fiberglass structures and structural members, all ferrous and non-ferrous metals, precast, pre-stressed and post-stressed concrete structures, agitators, air ducts, anchor, application of all sealants such as Thickol, Neoprene and similar types used to seal metal to metal surfaces, aprons, aqueducts, awnings, bar-joist, blast furnaces,

2

3

book stacks, boilers, (sectional water tube and tubular), boxes, brackets, bridges, bucks, bulkheads, bunkers, cable restoration on all suspension bridges, cableways, caissons, canopies, caps, cast tiling, chutes, clips, cofferdams, concentrators, conveyors, coolers, coping, corbels, corrugated sheets when attached to steel frames, cranes (the erection, installation, handling, operating and maintenance on all forms of construction work), crushers, cupolas, curtains, dams, decking (metal): roof decking (such as "Cofar" and similar type materials, as well as "Trusdeck", Mahon "M" deck and other dual purpose type roof deck) derricks, docks, domes, dredges, drums, duct and trench frames and plates, dumb waiter enclosures, dumpers, elevators, elevator cars, elevator enclosures, enamel tanks, enamel vats, escalators, expanded metals, facias, false work, fans, fencing, fiber glass/F.R.P. structural members that replace steel structural members, fire escapes, fins, flag poles, floor construction and flooring, flumes, fork trucks, frames, frames in support of boiler, fronts, fur rooms, gates, grating, grillage and foundation work, grill work, guards, hangers, hanging ceilings, hoppers, hot rooms, inclines, iron doors, jail and cell

4

work, joists (pre-cast, pre-stressed and post-stressed), kalomeined doors, kilns, lintels, lockers, locks, louvers, lulls, machinery (moving, hoisting, lowering and placing on foundations), making and installation of all articles made of wire and fibrous rope, marquees, material altered in field such as: framing, cutting, bending, drilling, burning, and welding by acetylene gas and electric machines, metal curtain walls, furniture, metal windows and enclosures, metal studs that take the place of steel/curtain walls, etc., metal stud, metal stud trusses, slender wall panels, all composite materials or fiberglass materials, mixers, monorails, multiplate, operating devices, ovens, pans, panels (insulated and non-insulated, factory and field assembled) pen stocks, pile drivers, plates, porcelain enameled panels, prefabricated metal buildings, pre-fabricated/pre-engineered metal panels, pre-fabricated/pre-engineered composite panels, pulverizers, racks (and automated rack systems), railings, (including pipe), railroad bridgework and maintenance, reinforcing rods and all materials relating to, such as: fiber glass, nylon, wire mesh, and any products/materials used in place of steel reinforcing rods, etc., reservoirs, rigging (including

5

Double time thereafter Monday thru Friday. All work performed prior to job site starting time, shall be at the double time rate. Sunday and Holidays shall be at the double time rate. Overtime work and pay shall be at a rate of 1 to 30 minutes equaling 1/2 hour of overtime. When overtime computes to 1/4 hour, benefits shall be paid with a 1/2 hour voucher.

(f) When overtime is performed during the week or on Saturdays, Sundays or holidays, no foreman shall be allowed to take the place of a regular journeyman Iron Worker to fill out the gang.

## Section 9. ECONOMIC PACKAGE AND WAGE RATES

The Union shall have the right to allocate between either existing or new wages or existing or new fringe benefit fund contributions. Prior to the effective date of each increment referred to herein, the Union shall notify the Association of the allocation to be made of such increment between wages and fringe benefits.

PAYMENT OF BENEFITS - For each pay period, a separate, certified check must be sent with a completed "Employer Weekly Payroll Report of Hours Worked" directly to Local 417 to purchase benefit

12

vouchers for that pay. Benefits are calculated on hours paid and are purchased in minimum increments of one half hour (no quarter hours can be purchased)

The employer contribution rate for benefits shall be for hours paid, not hours worked.

Bond - Each employer shall furnish a surety bond from a duly licensed company to the benefit of the Pension, Health, Annuity, Vacation, Industry Promotion and Training and Education Funds in accordance with the form provided by the local herein. Said bond to guarantee the payment of the aforesaid Fringe Benefits and Employees' Wages. The amount of the bond shall be determined by the Business Manager and the Administrator of the Funds.

Said bond shall provide for a collection penalty of 15% plus attorneys fees of 25% which the parties agree is a reasonable collection charge.

Said bond shall be on file in the office of Ironworkers Local #417 prior to the commencement of work within the jurisdiction of this local union.

13

**Journeyman Wages & Fringe Benefits shall be as follows:**
Effective July 1, 2006

Wages:
Journeyman Ironworker:
$ 30.80 Per hour
Foreman Ironworker:
$ 33.80 Per hour
General Foreman Ironworker:
$ 34.30 Per hour

Fringe Benefits:

| | | |
|---|---|---|
| Vacation | $ 5.00 | Per hour |
| **Annuity | $ 6.75 | Per hour |
| **Health Fund | $ 9.00 | Per hour |
| **Pension Fund | $ 7.25 | Per hour |
| **Training & Education | $ 1.35 | Per hour |
| Industry Promotion | $ .15 | Per hour |

Assessment Check Off (per Hour):
4.5% of Taxable Wage: $1.61
**Allocation may change within the period

Effective July 1, 2007-Plus $2.40
Effective July 1, 2008-Plus $2.50

**Section 10. APPRENTICE**
(a) On every job or operation there shall be one (1) Apprentice to four (4) Journeypersons on the project.
(b) There shall be no limitation upon the type of work to which Apprentices may be assigned

14

provided that no apprentice shall be permanently assigned to any one task, but shall be reasonably rotated from task to task to provide such Apprentice with maximum exposure to the tasks of the trade.
(c) The ratio of apprentices to journeypersons may be adjusted higher by approval of the General Executive Board.

**Apprentice Wages & Fringe Benefits shall be as follows:**
Effective July 1, 2006
Wages (per Hour):
1st Year Apprentice:
60% of Journeyman Rate = $ 18.48

2nd Year Apprentice:
70% of Journeyman Rate = $ 21.56

3rd Year Apprentice:
80% of Journeyman Rate = $ 24.64

4th Year Apprentice:
90% of Journeyman Rate = $ 27.72

Please Note: These percentage rates shall include Topping out fund, Vacation Fund and Annuity Fund. Health and Pension Rates shall be computed at Journeyman's rates.

Apprentice Fringe Benefits (per Hour):

| | 1st Yr | 2nd Yr | 3rd Yr | 4th Yr |
|---|---|---|---|---|
| Vacation: | $3.00 | $3.50 | $4.00 | $4.50 |
| **Annuity: | $4.35 | $5.08 | $5.80 | $6.53 |

15

**\*\*Health Fund:**

| $9.00 | $9.00 | $9.00 | $9.00 |

**\*\*Pension Fund:**

| $6.75 | $6.75 | $6.75 | $6.75 |

**\*\*Training & Education Fund:**

| $1.35 | $1.35 | $1.35 | $1.35 |

Industry Promotion:

| $ .15 | $ .15 | $ .15 | $ .15 |

Assessment Check Off for all Apprentices is $1.11 ($0.50 less than Journeyman rate)

\*\*Allocation may change within the period

Effective July 1, 2007:
    Plus percentage of  $2.40

Effective July 1, 2008:
    Plus percentage of  $2.50

(c)  There is hereby established a joint committee consisting of two (2) Union representatives designated by the Union and two (2) Employer representatives designated by the Association to study, formulate and establish, if agreed upon by the Union and the Association, a Pre-Apprentice Program, together with appropriate work rules, wages and fringe benefits which shall be incorporated into this agreement by an appropriate writing.

## Section 11. PIECEWORK

It is agreed that the employees will not contract, sub-contract, work piecework, or work

16

for less than the scale of wages established by the Agreement. The employers agree not to offer and/or to pay, and the employees will not accept a bonus based on specific performance on any individual job.

## Section 12. WORK LIMITATION

There shall be no limitation placed on the amount of work to be performed by any workman during working hours.

## Section 13. PAYMENT OF WAGES

(a) The regular pay day shall be once a week on such day as agreed upon between the Employer and the Union, and wages shall be paid one hour before quitting time, and wages are to be paid in cash except in cases where it is mutually agreed upon between the Employer and the Union to pay by check.

Where the Union permits an Employer to pay by check, the Employer shall provide the employees with a place to cash their checks, and a suitable amount of time to cash the checks during the pay day.

(b) Not more than three (3) days' wages may be withheld after the end of any payroll period.

(c) When employees are discharged or laid-off, they shall be paid in cash on the job immediately, and if required to go to some other point or to the office

17

of the Employer, the employees shall be paid for the time required to go to such place.

(d) Accompanying each payment of wages shall be a separate statement identifying the Employer and the employee, showing the total earnings, hours worked, the amount of each deduction, the purpose thereof and net earnings.

(e) When employees quit of their own accord, they shall wait until the regular pay day for the wages due them.

(f) In case of inclement weather on a pay day, employees shall be paid by 10:00 A.M., or by the end of the shape-up period. For all hours' delay in excess of shape-up period, employees shall be paid at the straight time rate.

(g) When an Employee has been employed for two (2) days or more and is being discharged, he must be paid in full, in cash one (1) hour prior to normal quitting time. If discharged at normal quitting time, the employee must be paid one (1) hour additional pay at the straight time rate. Any workman who does not receive his wages in full upon discharge or before quitting time shall be paid at straight time rates thereafter for each hour of waiting time.

18

## Section 14. UNION ASSESSMENT CHECK-OFF

The Employer shall deduct from the wages of each employee, working within the jurisdiction of the Union such sum as shall be certified in writing by the Financial Secretary-Treasurer of the Union to be the then current working assessment as duly adopted by the Union for each hours pay received, which sum is the working assessment due to the Union and shall remit the same to the Union. The method of payment shall be by paying such sums over to the office of the Local 40, 361 & 417 Security Funds by means of purchasing of the consolidated vouchers to be issued to all Employees. The Union shall hold the Employer harmless for any claims arising out of his deduction of work assessments from the wages of employees working within the jurisdiction of the Union made pursuant to and in accordance with this Section.

## Section 15. HEALTH PLAN

(a) For each straight time hour paid to each employee covered by this Agreement, the Employer shall make contributions to the Iron Workers Locals 40, 361 & 417 Health Fund at the following rates, as set forth in Section 9.

19

For each premium hour paid to each employee, the contribution shall be at premium rates. Premium time is defined in Section 8.

(b) The contributions of the Employers shall be used exclusively to pay or provide for the payment of group life insurance, accidental death and dismemberment insurance, hospital expense insurance, surgical expense insurance, medical expense insurance, and temporary disability benefits to eligible employees and their wives and children under 19 years of age in such form and amount as the Trustees of the said Health Fund may determine. The Trustees shall, out of the funds in their possession, also pay or provide for the payment of premiums on policy or policies of group insurance for sickness benefits which shall provide disability insurance benefits required to be made or paid under Chapter 600 of the Laws of New York approved and effective April 10, 1949, as amended, and the organization of the Health Fund.

(c) It is further agreed that this Agreement and the specific provision for sickness benefits hereunder, and such other benefits hereinabove mentioned as the Trustees may determine, shall be in lieu of any obligation imposed upon Employers or employees for insurance

20

and contribution required or provided for in such mentioned law.

(d) The said Health Fund shall continue to be administered pursuant to the Agreement and Declaration of Trust dated September 1, 1948, as amended and/or restated from time to time, which is hereby incorporated by reference and made part hereof.

(e) The required Employer contributions shall be paid in vouchers purchased from the Iron Workers Locals 40, 361 & 417 Health Fund. The said vouchers shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as required by the provisions of this Agreement. These vouchers shall serve as proof to the employee that benefits were paid.

Section 16. PENSION PLAN

(a) For each straight time hour paid to each employee covered by this Agreement the Employer shall make contributions to the Iron Workers Locals 40, 361 & 417 Pension Fund at the following rates, as set forth in Section 9.

For each premium hour paid to each employee, the contribution shall be at premium rates. Premium time is defined in Section 8.

(b) The contributions of the Employers shall be used exclusively

21

to provide pension benefits through a qualified plan to eligible employees in such form and amount as the Trustees of the Pension Fund may determine, and the organization and administration expenses of the Pension Fund.

(c) The Pension Fund shall continue to be administered pursuant to the Agreement and Declaration of Trust dated April 5, 1954, as amended and/or restated from time to time, which is hereby incorporated by reference and made part hereof.

(d) The required Employer contributions shall be paid in vouchers purchased from the Iron Workers Locals 40, 361 & 417 Pension Fund. The said vouchers shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as required by the provisions of this Agreement. These vouchers will serve as proof to the employee that benefits were paid.

## Section 17. VACATION PLAN

(a) For each straight time hour paid to each employee covered by this Agreement the Employer shall make contributions to Iron Workers Locals 40, 361 & 417 Vacation Fund at the following rates, as set forth in Section 9.

22

For each premium hour paid to each employee, the contribution shall be at premium rates. Premium time is defined in Section 8.

(b) The contributions of the Employer shall be used exclusively to provide vacation benefits to eligible employees in such form and amount as the Trustees of the Vacation Fund may determine, and the organization and administration expenses of the Vacation Fund.

(c) The said Vacation Fund shall continue to be administered pursuant to the Agreement and Declaration of Trust dated August 18,1960, as amended and/or restated from time to time, which is hereby incorporated by reference and made part hereof.

(d) The required Employer contributions shall be paid in vouchers purchased from the Iron Workers Locals 40, 361 & 417 Vacation Fund. The said vouchers shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as required by the provisions of this Agreement. These vouchers shall serve as proof to the employee that benefits were paid.

## Section 18. ANNUITY FUND

(a) For each hour paid to each employee covered by this Agreement

23

the Employer shall make contributions to the Iron Workers Locals 40, 361 & 417 Annuity Fund at the following rates, as set forth in Section 9.

For each premium hour paid to each employee, the contribution shall be at premium rates for each premium hour paid to each employee. Premium time is defined in Section 8.

(b) The contributions of the Employers shall be used to provide annuity (supplementary retirement) benefits, permanent disability benefits and any other lawful benefits which the Trustees may in their discretion provide, in such manner and amount as the Trustees may determine, and for the organization and administration expense of the Fund. The contributions shall be made on behalf of individual employees and credited to the individual employee's account in the Fund. The cents per hour contribution to this Fund shall not be considered as part of payroll for the purpose of calculating payments to any other Fund under this Agreement.

(c) The said Annuity fund shall continue to be administered pursuant to the Agreement and Declaration of Trust dated November 12, 1969, as amended and/or restated from time to

24

time, which is hereby incorporated by reference and made part hereof.

(d) The required Employer contributions shall be paid in vouchers purchased from the Iron Workers Local 40, 361 & 417 Annuity Fund. The said vouchers shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as required by the provisions of this Agreement. These vouchers shall serve as proof to the employee that benefits were paid.

Section 19. TOPPING OUT FUND (As of July 1, 1997 this will be an inactive Fund, until mutually agreed on by both parties.)

(a) For each hour paid to each employee covered by this Agreement the Employer shall make contributions to the Iron Workers Locals 40, 361 & 417 Topping Out Fund at the following rates, as set forth in Section 9.

For each premium hour paid to each employee, the contribution shall be at premium rates. Premium time is defined in section 8.

(b) The contributions of the Employers shall be used to provide benefits pursuant to an additional benefits plan to eligible employees in such form and amount as the Trustees of the Topping Out Fund may

25

determine, and for the organization and administrations expenses of the Fund.    The contributions shall be made on behalf of individual employees and credited to the employee's account in the Fund. The cents per hour contribution to the Fund shall not be considered as part of payroll for the purpose of calculating payments to any Fund under this Agreement.

(c) The said Topping Out Fund shall continue to be administered pursuant to the Agreement and Declaration of Trust dated October 12, 1982, as amended and/or restated from time to time, which is hereby incorporated by reference and made part hereof.

(d) The required Employer contributions shall be paid in vouchers purchased from the Iron Workers Locals 40, 361 & 417 Topping Out Fund.    The said vouchers shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as required by the provisions of this Agreement.    These vouchers shall serve as proof to the employee that benefits were paid.

## Section 20.  TRAINING AND EDUCATION FUND

(a) For each hour paid to each employee covered by this

26

Agreement, the Employer shall make contributions to the Iron Workers Local 417 Training and Education Fund at the rates set forth in Section 9.

For each premium hour paid to each employee, the contribution shall be at premium rates. Premium time is defined in Section 8.

The contributions of the Employers shall be used to provide for the training of apprentices and the upgrading or improvement of skills in the industry as shall be deemed necessary by the Trustees, and the organization and administration of this Fund.

(b) The said Training and Education Fund shall continue to be administered pursuant to the Agreement and Declaration of Trust dated February 1, 1967, as amended and/or restated from time to time, which is hereby incorporated by reference and made part hereof.

(c) The required Employer contributions shall be paid in vouchers purchased from the Iron Workers Local 417 Apprenticeship and Training Fund.    The said vouchers shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as required by the provisions of this Agreement.    These vouchers

27

shall serve as proof to the employee that benefits were paid.

## Section 21. IMPACT CONTRACT CLAUSE

The Union and Employer agree that by making contributions to IMPACT each of them shall become bound to IMPACT's Drug and Alcohol Screening Policy and Procedure or equivalent program and any amendments or modifications thereto. When an Association member requests a union member that has been cleared through the IMPACT database, one will be provided.

In addition to the per hour wage rate, the Employer shall contribute an additional one per cent (1%) of the existing wage rate to Ironworker Management Progressive Action Cooperative Trust (IMPACT), a jointly trusteed Cooperative Trust with federal tax exempt status under Section 501(a) of the Internal Revenue Code as an exempt organization under Section 501(c)(5) of the Internal Revenue Code. Tax-exempt status determination was rendered under the initial name of the Trust which was the Employers Responsive Educational Cooperation Trust of North America. The general purposes of the Trust include the improvement and development of the Ironworker Industry through Education, Training, Communication, Cooperation and governmental

28

lobbying and legislative initiatives.

The reporting, payment, frequency of payment and administration of such contributions shall be governed by the terms of the IMPACT Trust agreement, policies and resolutions.

Contributions shall be paid to the IMPACT Trust from the Ironworkers Local 417 Training and Education Fund.

If for any reason the IMPACT Trust is discontinued the contribution to the IMPACT Trust shall cease and the monies will remain part of the Ironworkers Local 417 Training and Education Fund and utilized at the discretion of the trustees of said fund as a normal use of these fund monies.

The contribution shall be in lieu of any and all contractual requirements for contributions to the National Ironworkers and Employers Apprenticeship Training and Journeyman Upgrading Fund and the Institute of the Ironworking Industry.

## Section 22. INDUSTRY PROMOTION FUND

(a)    The Employer shall contribute $ .15 (fifteen cents) per hour for each hour paid to each employee covered by this Agreement to the Fabricators and Erectors Association, Inc. Industry Promotion

29

Fund for work performed for the duration of this Agreement, the contributions shall be at premium rates for each premium hour paid to each employee. Premium time is defined in Section 8.

(b) The said Industry Promotion Fund shall continue to be administered pursuant to the Agreement and Declaration of Trust dated December 28, 1972, amended and/or restated from time to time, is hereby incorporated by reference and made part hereof.

(c) The contributions shall be used to advance the interests of the iron and steel industry in the Hudson Valley area of those who are engaged in it through such programs and activities, and in such manner and amount, as the Trustees in their discretion may determine are likely to foster greater use of the industry's products and services, expanded opportunities for employment, higher efficiency, the elimination of sub-standard working and safety conditions and related purposes as more fully specified in the Amended Agreement and Declaration of Trust.

(d) The required Employer contributions shall be paid in vouchers purchased from the Iron Workers Local Union 40, 361 & 417 Fund Office. The said vouchers shall be given to the employees in

30

accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as required by the provisions of this Agreement. These vouchers will serve as proof to the employee that benefits were paid.

## Section 23. TRUST FUNDS PROTECTION

(a) The Employer shall make available to the auditors of the Pension, Health, Vacation, Apprenticeship, Annuity, Topping Out and Industry Promotion Funds provided for in this Agreement within ten days after written notice from the Trustees, any and all records which, in the discretion of the Trustees of said Funds or any one Fund, may be required to determine whether the Employer has made the contributions it is obligated to make pursuant to this Agreement.

(b) The Employer shall furnish the Trustees of the Pension Fund, the Trustees of the Health Fund, the Trustees of the Vacation Fund, the Trustees of the Apprenticeship Fund, the Trustees of the Annuity Fund, the Trustees of the Topping Out Fund and the Trustees of the Industry Promotion Fund with reports for the purchase of the aforementioned Benefit Funds, providing the names, job classifications, social security

31

numbers, wages earned and hours worked for all employees covered under this Agreement, together with such other information as may be required by the Trustees for the proper and efficient administration of each of the said Funds.

(c)    Notwithstanding the provisions for the methods of payment of contributions to the various Trust Funds set forth in prior Sections of this Agreement, the Trustees of the Funds may in their discretion revise the agreed-upon methods of payment of contributions and the Employer shall, upon adequate notice, thenceforth make contributions to the methods of payment.

(d)    Failure to pay contributions or to provide reports of records in accordance with this Section to any of the aforesaid Funds as required, shall constitute a breach of this Agreement by the defaulting Employer, and the Union, without further notice, reserves the right to forthwith withdraw its men from jobs of the Employer, or take such other action as it deems necessary, any terms of this Agreement to the contrary notwithstanding, and the defaulting Employer must pay to each employee at the straight time rate for the number of regular working hours of employment which the employees who

32

are withdrawn from the Employer lose as a result of such withdrawal.

(e)    In the event a dispute arises in connection with the failure of the Employer to make the required payments to any of the Funds, as specified in this Agreement, or in connection with any rule or procedure of the Trustees of any of the Funds affecting collection of contributions to the Funds or distribution of vouchers to employees, such dispute shall be submitted for final and binding determination to Eric J. Schmertz as the Impartial Arbitrator. If for any reason Eric J. Schmertz is incapacitated or for any other reason is unable to act expeditiously, David Gregory shall be utilized as the substitute Arbitrator. The Arbitrator shall have all the powers granted to arbitrators pursuant to the Civil Practice Rules of Procedure of the State of New York and shall be authorized to compel the production of books and records involved in a dispute. The decision rendered by the Impartial Arbitrator shall be final and binding on the Employer and the Union. The expense of the arbitration shall be borne equally by the Employer and the Union except that, if collection is made pursuant to an arbitration award, such decision shall contain a directive

33

that the Employer pay the actual cost of an audit, if any, used to establish the indebtedness, plus the arbitration fee of $700.00 per day or as amended from time to time, for arbitration costs and expenses, plus reasonable attorneys' fees in the amount of 25 percent of the indebtedness which amount the parties agree is a reasonable collection charge, and in addition thereto, interest at 10 percent of the payments due to said Funds, which amounts shall be paid to the Trustees of said Funds. If any proceeding to confirm an award of the arbitrator, service may be made by registered or certified mail, within or without the State of New York, as the case may be.

(f) The Trustees of any or all of the said Funds may refer the collection of the required payments to any attorney and, in that event, the Employer agrees to pay, in addition to the monies owing, all collection expenses including filing and court costs, if any, together with interest at 10 percent, and attorneys' fees of 25 percent which the parties agree is a reasonable collection charge.

(g) Resort to a remedy under this Agreement or under the Agreements and Declarations of Trust for the collection of contributions due the Funds or any one Fund, shall

34

not be deemed a waiver of the right to resort to any other remedy provided therein or by law. Resort to one remedy at one time shall not be deemed a waiver of the right to resort to others at a future or subsequent time.

## Section 24. REPORTING TIME

(a) When employees covered by this Agreement are ordered to report to a job of eight (8) hours or less duration, the employees shall receive not less than eight (8) hours pay and eight (8) hours fringes except when inclement weather prevails.

(b) Members shall be paid two (2) hours pay as show-up time if work is suspended between the first two work hours, due to inclement weather.

(c) Members shall be paid four (4) hours pay if work is suspended between the second & fourth work hours, due to inclement weather.

(d) Members shall be paid eight (8) hours pay if work is suspended after first four work hours, due to inclement weather.

(e) All employees must remain on the job in order to be paid the above unless permission is granted by the Employer or his job superintendent as the case may be.

35

(f) Reporting time on Saturdays, Sundays and holidays shall be paid for at the straight time rate only.

(g) General Foreman and Foreman shall be guaranteed a minimum of eight (8) hours straight pay and eight (8) hours fringes on Saturday, Sunday and Holidays when work is suspended due to inclement weather.

## Section 25. FOREMAN

(a) On all jobs where a man is required to read plans and/or assume the responsibilities of a foreman he shall receive foreman's pay and/or on all jobs where there are two (2) or more men, one (1) shall be the foreman who shall receive foreman's pay. The foreman is the only representative of the Employer who shall issue instructions to the workman.

(b) The Employer agrees that, in no event, can a crew under one (1) foreman comprise of more than ten (10) men, which shall include the foreman.

(c) Foreman shall receive $3.00 per hour above journeyman's hourly rate. Fringes shall remain the same. General Foreman shall receive $3.50 per hour above the journeyman's hourly rate. Fringes shall remain the same.

36

(d) Foreman shall be guaranteed a minimum of eight (8) hours pay and fringes Monday through Friday and shall be paid for all overtime work as per section eight (8).

(e) A General Foreman shall be employed by the Contractor when there are three (3) or more Foremen on the job. The Contractor shall have the right to appoint the first foreman. All additional Foreman shall be appointed by the Business Manager.

(f) General Foreman shall be guaranteed a minimum of eight (8) hours pay and fringes Monday through Friday and shall be paid for all overtime work as per section eight (8).

(g) All General Foreman and Foreman shall be classified as straight time men who are hired by the week except at the start and finish of the job, and in such cases, they shall be paid for actual days worked.

(h) Whenever a composite crew is in place (Iron Worker and other trade) at least one Iron Worker shall receive the Foreman's rate and fringes.

## Section 26. SUPPLYING MEN FOR JOBS

(a) The Employer, upon ordering men from the Union Hall, shall order men 24 hours in advance,

37

at the Union Office on a regular working day-Monday through Friday. Men ordered 24 hours in advance shall report for work at the job site at job starting time.

(b) If the men are requested at job starting time, to immediate employment, they shall receive a full day's pay. If a replacement is needed he shall be paid from time of arrival on job.

## Section 27. IRON WORKERS REQUIRED ON GUY AND STIFF LEG DERRICKS

(a) Not less than six (6) men and a foreman shall be employed around any guy or stiff leg derrick used on steel erection.

(b) On all mobile or power operated rigs/cranes of any description, not less than four (4) men and a foreman shall be employed on steel erection and structural steel handling. This shall consist of one (1) foreman, three (3) Journeymen, and one (1) Apprentice. The use of the Apprentice shall be upon mutual consent of the Contractor and the Union. Otherwise the fourth (4th) man shall be a Journeyman.

(c) On work where derricks are used, a sufficient number of men shall be employed. It is agreed that the Employer, together with the Foreman, shall decide the number of

38

men necessary to man a job properly and safely.

## Section 28. RIVETING GANGS

(a) Riveting gangs shall be composed of not less than four (4) men at all times. The Employer may require heaters to have their fires going ready to furnish hot rivets at the regular starting time, but in such event, the heaters shall be paid double time for such time worked before the regular starting time.

(b) When three (3) or more riveting gangs are employed on any job, an assistant foreman shall be employed who shall not be required to work in any riveting gang except where emergencies arise which require the assistant foreman to temporarily fill in the gang.

## Section 29. REINFORCING STEEL AND MESH WORK

(a) On each job of reinforced concrete there shall be a foreman who shall be in charge of all men doing this class of work.

(b) All reinforced steel coming into the jurisdiction must be shipped to all jobs in 20 feet lengths or over, up to and including 3/4" size. All reinforcing rods over and above 3/4" size can be cut to length at the Employer's

39

discretion, but all bending shall be done on the job.

(c) An Iron Worker shall be placed on all concrete work until such time as steel is completely covered with concrete. Provided, however, if the same employer is present on the job site and there are Iron Workers in his employ who are available if necessary. No extra Iron Workers need be employed or positioned at the pour.

(d) On all mesh work of #6 gauge or heavier not less than two (2) ironworkers shall be employed to roll out mesh and complete work. It is understood that this does not cover patch work.

(e) All unloading, handling, cutting, bending and placing of all steel, including mesh coming under the jurisdiction of the Iron Worker shall be done by the Iron Workers. The bending machine shall be considered a tool of the trade and shall be maintained and serviced solely by the Iron Workers.

## Section 30. STONE SETTING

(a) The placing and operating of all derricks and rigging in connection with cut stone, pre-cast stone or concrete, mosaic and rubble, or any substitute for the foregoing, on all buildings, structures, bridges and viaducts in the course of construction,

40

alteration, addition or repair; also on all demolition jobs where the stone is hoisted on or off the wall with a derrick or crane.

(b) The rigging and erecting of all swinging and temporary scaffolds for setting, cleaning and pointing of cut-stone, pre-cast stone or concrete, mosaic or rubble or any substitute for the foregoing, and any rehanging of the same.

(c) The handling and rolling of all cut-stone, pre-cast stone or concrete, mosaic or rubble or any substitute for the same, also the loading or unloading of the same at freight terminals, buildings, structures, storage area, bridges and viaducts.

(d) All burning, welding and bolting in connection with the erection of pre-cast concrete and similar material.

(e) There shall be an Ironworker Signalman employed on setting stone or other similar material when power equipment is used.

The above Section 29 is subject to trade adjustments to which the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers is a party as well as decisions rendered by the National Joint Board for the Settlement of Jurisdictional disputes.

41

## Section 31 IRON WORKERS TOOLS

(a) Employees shall furnish for their own use all necessary hand tools to enable them to effectively install their work. Tools broken on the job shall be replaced by the Employer. No employee shall be held responsible for the loss of tools or equipment in his charge.

(b) Employers must provide a suitable tool box or change house with lock and key for the safe keeping of tools and clothing. The employees are to be compensated by the employer for any loss of same due to fire or burglary from shanty or tool box in an amount not to exceed $250.00 per employee. Any lose incurred shall be reported to the Employer and Business Manager within three (3) days after such loss and adjustment shall be made by Employer.

## Section 32. LAY OUT MAN

When the job requires a full time lay-out man for fabrication or re-fabrication of steel on the job site, the Iron Worker assigned to be in charge of this type of work shall be paid the foreman's rate of wages. He may be assigned a sufficient number of Iron Workers as may be required to assist him in the performance of his work.

42

## Section 33. CHECKING IN AND OUT OF TOOLS

(a) When tools are to be checked in and out, it shall be done during working hours. On any job for any one employer using seventeen (17) or more Iron Workers, one (1) Journeyman Iron Worker, other than the steward, shall be assigned to the distribution and servicing of all tools and equipment used by Iron Workers. If required, the employer shall provide a suitable tool-room for this purpose.

(b) The employees shall be allowed an adequate amount of time (no less than 10 minutes of time), to put away tools.

## Section 34. SAFETY PROVISIONS

(a) When working steel, safety provisions will be adhered to and in accordance with OSHA Regulations.

(b) Personal protective equipment to be supplied by employer in accordance to OSHA Regulations.

(c) In the hoisting and rigging of steel or other materials, the safe working loads will be adhered to by OSHA standards and regulations.

(d) Slings per OSHA standards.

(e) Burning of Paint. Whenever Iron Workers are burning painted surfaces proper air

43

respirators will be supplied by the Employer.

(f) Protection of Signal Devices. Proper practical safe housing casing or tubing shall be provided for any and every means, method, appliance or equipment employed to transmit or give signals, directing work or operating of any and various devices in connection with work being done by employees.

(g) Elevator Shaft Protection. No employee will be permitted to work in an elevator shaft while car is in operation. The first floor beneath and the first above men working, shall be planked safe in all elevator shafts.

(h) All bar joists shall be bolted or welded at the bearing points before the installation of bridging. Welding and bridging shall be completed before landing of any material.

(i) Shear connections and studs shall not be applied until steel is erected due to the safety hazard.

(j) Guy cables or sag rods will be installed in the first or second bay, then as needed during the erection of structural steel to insure the safety of the men.

(k) To insure the safety of all ironworkers, all falsework, needle beams, floats and all

44

supports to be used by the Iron Workers, shall be erected by the Iron Workers.

(1) All signaling done on ironwork shall be done by the ironworker.

(m) (Sky Climbers) OSHA Ruling.

(n) There shall be no "Christmas Treeing" of iron unless agreed upon by the Local Union and Contractors Association.

(o) When working over water, there shall be a motorized safety boat manned by an Iron Worker at all times.

(p) All safety provisions not mentioned in the above paragraphs shall be referred to and adhered to, as provided by the current "Code of Federal Regulations-OSHA Department of Labor".

## Section 35. BURNING AND WELDING

(a) The Employer shall be required to furnish all safety equipment in regards to burning and welding including but not limited to eye protection, welding gloves and leathers and the employee shall be compelled to wear them.

The welding machine used by the Iron Workers for the purpose of performing work under the jurisdiction of the Iron Worker shall be considered a tool of the trade and shall be maintained,

45

operated and serviced exclusively by the ironworker trade.

(b) When welding tests are required of the employee, the expense of same shall be borne by the Employer.

(c) When burning and welding, there shall be a firewatch when deemed necessary. The position of firewatch shall be the work of the Iron Worker.

(d) All welders and burners working on galvanized steel, painted or unpainted surfaces or other toxic metals within a confined area shall be furnished with the proper respirators.

(e) Whenever a contractor calls for a Certified Welder for five (5) days or more, it shall be the responsibility of the Contractor to have the welder's papers properly signed or provide a letter verifying his employment, as a welder at the work site, and length of time employed.

## Section 36. SHIPPING EMPLOYEES

Employees shipped to jobs or work out of the jurisdiction of the Local Union shall receive transportation, traveling time and expenses providing they remain on the job thirty (30) days or until the job is completed. Employees shipped to a job and not put to work, weather permitting work, or the job is not ready for them to go to work, shall be paid the regular wage rate for such time, or such employees shall be shipped back to the shipping point with time and transportation paid by the Employer.

## Section 37. DRINKING WATER - CLOTHING ROOM

The Employer shall furnish suitable drinking water at all times, and each job of sufficient size and length to justify same shall be provided with suitable change house for the employees to change their clothes and keep their tools - to be heated when necessary.

## Section 38. COMPENSATION INSURANCE AND INJURIES

(a) The Employer must at all times provide New York State Workmen's Compensation Insurance and shall furnish evidence of such coverage to the Union.

(b) All Employees injured on the job shall be paid in full wage and fringe supplements for the time spent receiving medical attention of the day of the injury. If a Doctor certifies that said employee is unable to return to work on the day of the injury, the employee shall be paid full wages and fringe supplements for the day.

46

47

## Section 39. BUSINESS REPRESENTATIVE

The Business Representative of the Union shall be permitted to visit all jobs, but will in no way interfere with the progress of the work.

## Section 40. JOB STEWARD

(a) There shall be a steward on each job who shall be appointed by the Business Representative. He shall keep a record of the workers laid off and discharged, and take up all grievances on the job and try to have the same adjusted, and in the event he cannot adjust them, he must promptly report that fact to the Business Representative, who shall attempt to adjust any matter without a stoppage of work. The steward shall see that the provisions of this Agreement are complied with and report to the Union the true conditions and facts. The steward shall promptly take care of injured workers and accompany them to their homes or to a hospital as the case may require, without any loss of time, and report the injury to the Union.

(b) The Employer agrees that the job steward will not be discharged or transferred until after proper notification has been given to the Union and further, when employees are laid off, the job steward will be the last man laid off, providing he is capable of performing the work in question, it being understood and agreed that the steward's duties shall not include any matters relating to referral, hiring or termination of employment.

(c) On jobs where more than one (1) ironworker is required, the shop steward shall be able to take the place of a journeyman on overtime work, if capable of performing his/her duties.

(d) The job steward shall not be restricted from performing any of his duties.

## Section 41.    PROTECTION OF UNION PRINCIPLES

The removal of Journeymen Ironworkers and Apprentices from a job in order to render legal assistance to other local unions to protect Union principles shall not constitute a violation of this Agreement, provided such removal is first approved by the General Executive Board and twenty-four (24) hours' notice thereof is first given to the Employer involved.

## Section 42.    NON-DISCRIMINATION

There shall be no discrimination against any employee by reason of race, creed, color, national origin, sex or age.

48

49

## Section 43.  SUB-CONTRACTORS

(a)  The Employer agrees not to sub-contract any work covered within the scope of this Agreement to be performed at the job site of construction work except under terms and conditions consistent with and in conflict with this Agreement.

(b)  The parties agree that all Contractors, whether Prime, General, Sub. or any other category of Contractor shall become parties to this Agreement and signatories thereof, by executing same, and that all Sub-Contractors employed by such Contractors shall be required to execute this Agreement.  The aforementioned contractors guarantee the payment of wages and fringe benefit payments, as required by this Agreement by any sub-contractor whom they employ, hire or retain. Where any contractor, individual, partnership or corporation is a signatory to this Agreement and sub-contracts, work hereunder to any affiliate or subsidiary contractor, whether same be an individual, partnership or corporation; the signatory contractor hereby guarantees that such affiliate or subsidiary will observe all of the terms, conditions and provisions of this Agreement as though it had duly executed same, and is fully responsible therefore.

50

## Section 44.  SAVING CLAUSE

Should any part of or provision herein contained be rendered or declared invalid by reason of any existing or subsequently enacted legislation, or by any decree of a court of competent jurisdiction such invalidation of such part or portion of this Agreement shall not invalidate the remaining portions thereof, provided however, upon such invalidation the parties signatory hereto agree to immediately meet to renegotiate such parts of provisions affected.

The remaining parts of provisions shall remain in full force and effect.

## Section 45.  ARBITRATION

(a)  The parties shall establish a Joint Trade Arbitration Board, which shall consist of three (3) members appointed by the Employers and three (3) members appointed by the Union.

(b)  Any dispute as to the proper interpretation, application or breach of this Agreement shall be handled in the first instance by a representative of the Union and the Employer and if they fail to reach a settlement within five (5) days, such dispute shall be referred to the Joint Trade Arbitration Board for decision.

51

(c) The Board shall meet within forty-eight (48) hours after receipt of any complaint or grievance.

(d) All questions shall be decided by a majority vote of the full board and in the event of a tie vote or a failure of the Board to agree after two (2) consecutive daily meetings, the Joint Arbitration Board shall refer the matter to the Arbitrator designated under Section 22 (e).

(e) The question or questions in dispute shall properly be submitted to the arbitrator, it being understood that disputes over work jurisdiction are not subject to the above arbitration procedure. Such disputes shall be resolved in accordance with the first paragraph of Section 2 herein.

SCHEDULE "A"

For an updated list of contractor members, contact

Richard O'Beirne,
Executive Director
Fabricators and Erectors at:
114 Meadow Ave.
Newburgh, NY 12550
Phone:  845 562-4280
Fax:    845 562-1448

52

53

## TERM OF AGREEMENT

The Agreement, with any amendments thereof made as provided for therein, shall remain in force and effect until Midnight of April 30, 2009, and unless written notice be given by either party to the other at least four (4) months prior to such date of a desire for a change therein or to terminate the same, it shall continue in effect for an additional year thereafter. In the same manner, this Agreement, with any amendments thereof shall remain in effect from year to year thereafter, subject to the termination at the expiration of any such contract year upon notice in writing given by either party to the other at least four (4) months prior to the expiration of such contract year. Any notice as hereinabove provided for in this article, whether specifying a desire to terminate or to change at the end of the current contract year, shall have the effect of terminating this Agreement at such time.

54

Dated: April 28, 2006

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto as of the date and year first above written, in the Town of Newburgh, State of New York.

FOR LOCAL UNION 417
of the
INTERNATIONAL ASSOCIATION OF
BRIDGE, STRUCTURAL, ORNAMENTAL AND
REINFORCING IRON WORKERS

By: Matthew P Gida
President & Business Agent

By: Michael E Gaydos
Business Manager & Financial
Secretary-Treasurer

By: Philip Moresco
Recording Secretary & Business
Agent

FOR FABRICATORS AND
ERECTORS ASSOCIATION, INC.

By: John G. Flannery
President

By: John Bidosky III
Vice-President

55

FOR THE EMPLOYER

_____
Name of Company (Print)

_____
Street Address (Print)

_____
City (Print)        State      Zip

_____
Officer's Name  (Print)

_____
Officer's Name (Signature)

_____
(Area Code) Telephone

_____
(Area Code) Fax. Number

Date:_____

_____
(Employers I.D. Number)

56

**Exhibit 2**

Jan-18-97   12:07pm   From-Cotleran O'Hara & Mills              5187421785              T-787  P.002/002  F-890

07/25/2007  18:15  8495558422              IRONWORKERS LOC 417                    PAGE  05

**International Association of**
**Bridge, Structural, Ornamental & Reinforcing**
# IRONWORKERS
www.ironwork.com
## LOCAL UNION 8417 - NEWBURGH

Mailing Address:    953 Route 32, Vails, NY 12589
PHONE: (845) 565-8417    FAX: (845) 565-8429

THIS AGREEMENT, made on the 21 day of February at 07 by
and between Symmetry Products Group whose address is
55 Industrial Court, Lorain, Ohio 52855

hereinafter referred to as the "Employer" and the International Association of
Bridge, Structural & Ornamental Iron Workers Local 8417, hereinafter referred to
as the "Union".

The "Employer" recognizes the "Union" as the Collective Bargaining Agent for all
Employees engaged in work covered by Local Union 8417; the Employer has received
from the Union a copy of the current Independent Agreement and agrees to abide
by all the Terms and Conditions of employment for its employees, as set forth in
the said Agreement and to pay the wage rates for the Iron Workers, as set forth
therein and to make contributions to the International Union of Iron Workers,
Local Union 8417, various Fringe Benefit Plans, as further provided in said
agreements.

This Agreement, with any amendments thereof made as provided for therein, shall
remain in force and effect until Midnight of April 30, 2009, and unless written
notice is given by either party to the other at least four (4) months prior to
such date of a desire for a change ... shall be deemed to be terminated the same, it shall
continue in effect for an additional year thereafter. In the same manner, this
Agreement, with any amendments thereof shall remain in effect from year to year
thereafter, ... subject to the termination at the expiration of any such contract
year upon notice in writing given by either party to the other at least four (4)
months prior to the expiration of such contract year. Any notice as hereinabove
provided for in this article, whether modifying a desire to terminate or to
change at the end of the current contract year, shall have the effect of
terminating this Agreement at such time.

International Association of
Bridge, Structural & Ornamental
Ironworkers Local 8417

_(signature)_                                    Symmetry Products Group
                                                 NAME OF EMPLOYER

MICHAEL O'HARA                                   _(signature)_
Business Manager &                               NAME OF EMPLOYER & TITLE
Financial Secretary -
Treasurer                                        Aldha Fernier
                                                 (PRINT NAME)

                                                 65 Industrial Circle
                                                 STREET ADDRESS

                                                 Lorain  OH 02855
                                                 CITY, STATE AND ZIP CODE

92  39Vd                    417 301 SBEXBOWNOBI                0248555648   51:81 2002/52/20

**Exhibit 3**

OFFICE OF THE IMPARTIAL ARBITRATOR
-------------------------------------------X
IN THE MATTER OF THE ARBITRATION                    :
                                                    :
                    between                         :         AWARD
                                                    :
IRON WORKERS LOCAL UNION NO. 417                    :
and IRON WORKERS LOCALS 40,                         :
361 & 417 UNION SECURITY FUNDS,                     :
                  - and -                           :
                                                    :
SYMMETRY PRODUCTS GROUP                             :
                                                    :
-------------------------------------------X

          The  Undersigned,  designated  as  the  Impartial
Arbitrator under the collective bargaining agreement and related
Trust Agreement between the above-named Union, Union Security
Funds and the Employer, having been duly sworn and having duly
heard the proof and allegations of the Union and the Security
Funds, the Employer having failed to appear at a scheduled
hearing on December 5, 2007 after due notice by Certified Mail,
makes  the  following  AWARD,  in  accordance  with  my  express
authority under said collective bargaining agreement and Trust
Agreement:

          SYMMETRY  PRODUCTS  GROUP,  violated  the
          collective  bargaining  agreement  and
          related  Trust  Agreement  by  failing  to
          EMPLOY  Local  417  Ironworkers  for
          covered work at the Kiryas Joel School
          jobsite.

          Accordingly, SYMMETRY PRODUCTS GROUP is
          directed to forthwith pay to the Union
          and the Funds the following sums:

| | |
|---|---|
| Contributions due to the Funds for the period | $20,076.80 |
| Wages due to the Union | $19,904.00 |
| Interest | $ 3,664.90 |
| Attorneys Fees | $ 9,995.20 |
| Liquidated Damages | $ 7,996.16 |
| Impartial Arbitrator's fee and expenses | $  1,405.00 |
| TOTAL DUE | $63,041.26 |

Eric J. Schmertz, Impartial Arbitrator

DATED:  December 5, 2007

STATE OF NEW YORK  )
                                            ss:
COUNTY OF NEW YORK )

I, Eric J. Schmertz do hereby affirm upon my Oath as Impartial Arbitrator that I am the individual described in and who executed this instrument, which is my AWARD.

**Exhibit 4**

Jan-29-08   00:46   From-Colleran O'Hara & Mills   5162485963   T-857   P.001/004   F-800

# COLLERAN, O'HARA & MILLS L.L.P.

1225 FRANKLIN AVENUE, SUITE 450

GARDEN CITY, NEW YORK 11530

WILLIAM M. COLLERAN (1915-1958)
DANIEL L. O'HARA
JOHN F. MILLS (1930-2000)
STEPHEN J. CROARKE
RICHARD R. O'HARA
MARK C. HOLMES PENNINGTON
JANET B. DALSE
RICHARD D. UBY
STEPHEN J. SUAREZ
HUGH G. TYRRELL
LINDA G. BRYANT
EDWARD D. BASSO
JOHN J. BARRY
ALSO ADMITTED IN NJ

518 248-5757
212 514-9119

OF COUNSEL
GLENN A. KREBS
RICHARD RECHLER

PARALEGALS
LAURA A. HARRINGTON
CHRISTOPHER DONOFRIO
JOAN CANCELLIERI
KRISTINE MURPHY
LILLY PIAZZA

EDWARD J. CLEARY
HEALTH & SAFETY CONSULTANT

January 29, 2008

VIA FACSIMILE
(401) 365-6273
Mr. Steven Lancia
Symmetry Products Group
30 Industrial Circle
Lincoln, RI 02865

Re:   Local 417
      Our File #:   3003-0892

Dear Mr. Stone:

Enclosed is a Demand with Award sent to your above address on December 10, 2007, which was returned "unclaimed, unable to forward."

PLEASE BE ADVISED we are moving to confirm this Award to a Judgment.

Very truly yours,

COLLERAN, O'HARA & MILLS L.L.P.

BY: _____
        LILLY PIAZZA
        Paralegal

LP2
Enclosure
cc:   M. Gaydos
      Mr. Peter Stone (401) 633-6966

**Exhibit 5**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

SYMMETRY PRODUCTS GROUP,

        Petitioner,

    and

IRON WORKS LOCAL UNION NO. 417, IRON
WORKS LOCALS 40, 361 and 417 UNION
SECURITY FUNDS,

        Respondents.

Index No.:

**AFFIDAVIT OF
GLORIA FOURNIER**

STATE OF RHODE ISLAND    :
                        :s.s.
COUNTY OF KENT           :

GLORIA FOURNIER, being duly sworn, deposes and says:

1.    I reside at 534 Main Street, East Greenwich, Rhode Island, and my telephone number is (401) 749-2890. I make this affidavit in support of Symmetry's Petition seeking to vacate an arbitration award dated March 7, 2008, a true and accurate copy of which is attached hereto as Exhibit 1.

2.    My date of birth is August 6, 1981, and I am currently 26 years old. I graduated high school in 1999, and graduated college in 2005.

3.    I commenced employment at Symmetry Products Group ("Symmetry") on or about November 20, 2001, and while at Symmetry, I held a variety of jobs. I started as a part-time receptionist from 2001 to 2003. My duties as a receptionist were to answer phones and take messages, type documents, make photocopies, and receive mail and packages.

4.    From 2003 to 2006, I worked as a part-time administrative assistant to Symmetry's CFO, Mark Travers ("Mr. Travers"). My duties as Mr. Travers' assistant were the same as when I was a receptionist, with the additional duties of invoicing and doing cash receipts. While employed as a receptionist and an administrative assistant, I was paid on an hourly wage basis. Over that period, my hourly wage ranged from $9/hour to $14/hour.

5.    Beginning in Spring 2006 until Spring of 2007, I was the Bookkeeper. My duties as Bookkeeper were to handle all cash receipts, printing checks to be signed, managing accounts payable, running errands to the bank, and making deposits. While employed as Bookkeeper, I was paid on a salary basis. My salary was approximately $40,000/year and I received health and other benefits.

6.    My supervisors at Symmetry were Steven Lancia ("Mr. Lancia") and Mr. Travers. Mr. Lancia and Mr. Travers were the only employees who were authorized to execute or sign contracts or other legally binding documents on behalf of Symmetry.

7.    I never had the authority to sign on the behalf of the Symmetry or bind Symmetry to any agreement. I never represented to any individual or entity that I had the authority to bind Symmetry to any agreement.

8.    On or about February 21, 2007, I signed an Agreement that had been sent to Symmetry by the Ironworkers Local Union #417 ("Agreement"), a true and accurate copy of which is attached hereto as Exhibit 2. The signature on that Agreement is mine, but I have no recollection of signing the Agreement and did not have the authority to do so. No one instructed me to execute the Agreement. I must have executed it by mistake.

9.    I left Symmetry in May 2007, because I had majored in accounting in college and wished to find a job at an accounting firm.

10.    I am currently employed by Chaput and Feeney, an accounting firm. My current duties include receptionist duties and other ministerial office duties. I do not have the authority to execute legally binding documents in this job.


Dated: East Greenwich, Rhode Island
        March 5, 2008


Respectfully submitted,

GLORIA FOURNIER


Sworn to before me this
_5th_ day of March, 2008

NOTARY PUBLIC
Com Exp. 6/20/09

**Exhibit 6**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

SYMMETRY PRODUCTS GROUP,

      Petitioner,

    vs.

IRON WORKS LOCAL UNION NO. 417,
IRON WORKS LOCALS 40, 361 and 417
UNION SECURITY FUNDS,

      Respondents.

Index No.:

**AFFIDAVIT OF STEVEN LANCIA**

STATE OF RHODE ISLAND    :

                     :s.s.

COUNTY OF PROVIDENCE    

STEVEN LANCIA, being duly sworn, deposes and says:

1.     I reside at 1117 Douglas Ave. N. Providence, RI 02904. I make this affidavit in support of Petitioner Symmetry Product Group's ("Symmetry") Petition seeking to vacate an arbitration award dated March 7, 2008, a true and accurate copy of which is attached hereto as Exhibit 1.

2.     I am the President of Symmetry. I have held this position at Symmetry since the creation of the company in 1982.

3.     In 2001, Symmetry hired Ms. Gloria Fournier ("Ms. Fournier") to perform assistant and secretarial duties, including answering phones and taking messages, typing documents, making photocopies, and other ministerial duties.- sign waiver of liens and low money check amounts.

4.      The only employees of Symmetry who are authorized to execute or sign contracts or other legally binding documents are myself and Mark Travers, Symmetry's CFO.

5.      On or around February 21, 2007, an Agreement ("Agreement") was mailed to Symmetry that would bind Symmetry to a collective bargaining agreement with Ironworkers Local Union #417. This Agreement was never seen by me or Mr. Travers. When the Agreement was brought to my attention, I learned that the Agreement was accidentally executed by Ms. Fournier.

6.      Upon learning of the planned arbitration, I contacted Mr. Denis Engel (Mr. Engel") at Colleran, O'Hara & Mills LLP, counsel for Respondents. Mr. Engel agreed to delay the arbitration in order to give Symmetry and Respondents time to negotiate the terms of any agreement. I was assured by Mr. Engel that the arbitration would not take place on December 5, 2007, and that no default award would be taken against Symmetry, as we were negotiating a settlement.

7.      Despite this representation by Mr. Engel, I received a letter informing me that Colleran, O'Hara & Mills LLP intend to move forward in obtaining a judgment against Symmetry for the award.

Dated: Providence, Rhode Island
       March 19, 2008

                                                STEVEN LANCIA


Sworn to before me this
_20_ Day of March, 2008


NOTARY PUBLIC

- 2 -

STATE OF NEW YORK      :
                       : SS.:
COUNTY OF NEW YORK :

    KORINNA M. SELSTAD, being sworn, says: I am not a party to the action, am over 18 years of age and reside at 361 W. 51st St., New York, New York 10019.

    On March 21, 2008, I served a true copy of the annexed **NOTICE OF AMENDED PETITION** and **AMENDED PETITION**

TO:    Denis A. Engel, Esq.
        Colleran, O'Hara & Mills LLP
        Attorneys for Respondents IRON WORKS
        LOCAL UNION NO. 417, IRON WORKS
        LOCALS 40, 361 and 417 UNION SECURITY FUNDS
        1225 Franklin Avenue, Suite 450
        Garden City, New York 11530

on this date by mailing the same in a sealed envelope, with postage prepaid thereon, in an official depository of the U.S. Postal Service.

                                      KORINNA M. SELSTAD

Sworn to before me on this
21th day of March, 2008

NOTARY PUBLIC

THOMAS M. LANCIA
NOTARY PUBLIC
State of New York No. 02LA6030385
Term Expires
9-7-08

SYMMETRY PRODUCTS GROUP

v.

IRON WORKS LOCAL UNION NO. 417, IRON WORKS LOCALS 40, 361 and 417 UNION SECURITY FUNDS

## NOTICE OF AMENDED PETITION AND AMENDED VERIFIED PETITION

**Thomas M. Lancia PLLC**

*Attorney for*    Plaintiff SYMMETRY PRODUCTS GROUP

217 Broadway, Suite 608
New York, New York 10007
Telephone: 212.964.3157

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated:* ............................     Signature ............................

Print Signer's Name ............................

*Service of a copy of the within*                                              *is hereby admitted.*

*Dated:*

............................

*Attorney(s) for*

*PLEASE TAKE NOTICE*

☐   *that the within is a (certified) true copy of a*
NOTICE OF   *entered in the office of the clerk of the within named Court on*             *20*
ENTRY

☐   *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF   *Hon.*                     *one of the judges of the within named Court,*
SETTLEMENT   *at*
         *on*                  *20*     *, at*            *M.*

*Dated:*

**Thomas M. Lancia PLLC**
*Attorney for*   Plaintiff SYMMETRY PRODUCTS GROUP

217 Broadway, Suite 608
New York, New York 10007

*To:*

*Attorney(s) for*

Request for judicial intervention, 22 NYCRR 202.6, 1-09

USC-840 (REV 1/2000)

Excelsior, Publisher, NYC 10013
www.blumberg.com

## REQUEST FOR JUDICIAL INTERVENTION

Supreme Court,
New York County

Index No. 103545/08
Date Purch. 03/07/08

For Clerk Only

PLAINTIFF(S): SYMMETRY PRODUCTS GROUP,

IAS Entry Date

Judge Assigned

DEFENDANT(S): IRON WORKS LOCAL UNION NO. 417, IRON WORKS LOCALS
40, 361 AND 417 UNION SECURITY FUNDS

RECEIVED

MAR 0 7 2008

IAS MOTION
SUPPORT OFFICE

RJI Date

Date issue joined: N/A

Bill of particulars served :    Yes    No

### NATURE OF JUDICIAL INTERVENTION (check ONE box only AND enter information)

Request for preliminary conference

Note of issue and/or certificate of readiness

Notice of motion (return date                    )

Order to show cause

Notice of petition (return date APRIL 2, 2008        )
Relief sought VACATION OF ARBITRATION AWARD
Notice of medical or dental malpractice action (specify

Notice of petition (return date                    )

Other ex parte application (specify

Statement of net worth
Writ of habeas corpus
Other (specify

### NATURE OF ACTION OR PROCEEDING (check ONE box only)

| | | **Torts** | |
|---|---|---|---|
| | -CM | **Malpractice** | |
| | -UM | Medical/Podiatric | -MM |
| | | Dental | -DM |
| | -CONT | *Other Professional | -OPM |
| | -CORP | Motor Vehicle | -MV |
| Insurance (where insurer is a party, except arbitration) | -INS | *Products Liability | -PL |
| UCC (including sales, negotiable instruments) | -UCC | Environmental | -EN |
| Other Commercial | -OC | Asbestos | -ASB |
| **Property** | | Breast Implant | -BI |
| Certiorari | -TAX | *Other Negligence | -OTN |
| Foreclosure | -FOR | *Other Tort (including intentional) | -OT |
| Condemnation | -COND | | |
| Landlord/Tenant | -LT | **Special Proceedings** | |
| Other Real Property | -ORP | Article 75 (Arbitration) | -ART 75 |
| **Other Matters** | -OTH | Article 77 (Trusts) | -ART 77 |
| | | Article 78 | -ART 78 |
| | | Election Law | -ELEC |
| | | Guardianship (MHL Art. 81) | -GUARD 81 |
| | | *Other Mental Hygiene | -MHYG |
| *If asterisk used, please specify further. | | *Other Special Proceeding | -OSP |

Check "YES" or "NO" for each of the following questions. Is this action/proceeding against a:

YES ■ NO Municipality: (specify                          YES ■ NO Public Authority: (specify

}                                                                                    }

■ YES     NO Does this action/proceeding seek equitable relief?
YES ■ NO Does this action/proceeding seek recovery for personal injury?
YES ■ NO Does this action/proceeding seek recovery for property damage?

**Pre-Note Time Frames:**
(This applies to all cases except contested matrimonials and tax certiorari cases)
Estimated time period for case to be ready for trial (from filing of RJI to filing of Note of Issue):
Expedited: 0 - 8 months    ■ Standard: 9 - 12 months    Complex: 13 - 15 months

**Contested Matrimonial Cases Only: (Check and give date)**
Has summons been served?                     No    Yes,    Date
Was a Note of No Necessity filed?            No    Yes,    Date

**Attorney(s) for plaintiff(s):**
Self Rep.*

| Name | Address | Phone No. |
|---|---|---|
| Thomas M. Lancia, Esq. | Thomas M. Lancia PLLC<br>217 Broadway, Suite 608<br>New York, New York  10007 | (212) 964-3157 |

**Attorney(s) for defendants(s):**
Self Rep.*

| Name | Address | Phone No. |
|---|---|---|
| Denis A. Engel, Esq. | Colleran, O'Hara & Mills LLP<br>1225 Franklin Avenue, Suite 450<br>Garden City, New York  11530 | (516) 248-5757 |

* Self Represented: parties representing themselves, without an attorney, should check the "Self Rep" box and enter their name, address and phone number in the space provided above for attorneys.

**INSURANCE CARRIERS:**

**RELATED CASES: (If NONE, write "NONE" below)**

|  | Index # | Court | Nature of relationship |
|---|---|---|---|

I affirm under penalty of perjury that, to my knowledge, other than as noted above, there are and have been no related actions or proceedings, nor has a request for judicial intervention previously been filed in this action or proceeding.

Dated: March 7, 2008

_____
(Signature)
Thomas M. Lancia, Esq.
(Print or type name)
Petitioner Symmetry Products Group
(Attorney for)

*Attach rider sheets if necessary to provide required information.*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

SYMMETRY PRODUCTS GROUP,

        Petitioner,

    and

IRON WORKS LOCAL UNION NO. 417, IRON
WORKS LOCALS 40, 361 and 417 UNION
SECURITY FUNDS,

        Respondents.

Index No.:

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S REQUEST TO VACATE AN ARBITRATION AWARD PURSUANT TO CPLR §7511

THOMAS M. LANCIA PLLC
*Attorney for Petitioner SYMMETRY PRODUCTS GROUP*
217 Broadway, Suite 608
New York, New York 10007
(212) 964-3157

*Thomas M. Lancia, Esq.*
*Korinna M. Selstad, Esq.*
*Of Counsel*

-1-

## PRELIMINARY STATEMENT

Petitioner SYMMETRY PRODUCTS GROUP ("Symmetry;" "Petitioner") is a Rhode Island corporation in the business of designing and making specialized moldings and trim, wall surfaces, retail sculptures, signage and other specialized products. On or about February 21, 2007, Gloria Fournier ("Ms. Fournier"), a secretarial employee of Symmetry, executed an agreement ("Agreement") without the knowledge or authority of Petitioner. Petition, ¶4. The terms of that Agreement provide that Petitioner recognizes Respondent IRON WORKS LOCAL UNION NO. 417 ("the Union") and agrees to abide by the terms and conditions set forth in the collective bargaining agreement established by the Union. Petition, Exs. 1 and 2. That agreement further provides that if Petitioner fails to hire workers organized under the Union, Petitioner shall be liable to make payments into Respondent IRON WORKS LOCALS 40, 361 AND 417 UNION SECURITY FUNDS ("Trust Funds"), which are various trust funds defined in Section 23 of the collective bargaining agreement. Petition, ¶5.

Petitioner was employed to perform services at Kiryas Joel School, but being unaware of the Agreement invalidly executed by Ms. Fournier, did not use Union employees.

In late 2007, Steven Lancia ("Mr. Lancia"), the president of Petitioner, received a letter from Denis Engel ("Mr. Engel") of Colleran, O'Hara & Mills LLP, the law firm representing Respondents, suggesting that Petitioner had breached the Agreement and collective bargaining agreement and was subject to binding arbitration. Mr. Lancia spoke with Mr. Engel, and was assured that the arbitration was not going to take place and that a default award against Petitioner would not be taken. Petition, ¶11.

1

Despite these assurances, on December 5, 2007, Eric J. Schmertz, the Impartial Arbitrator named in Section 23 of the collective bargaining agreement, granted Respondents an arbitration award in default in the amount $60,041.26. Petition, Exhibit 3. Subsequent to that award, Mr. Lancia was in further contact with Mr. Engel, and was assured that Respondents would not seek to confirm the award, and that Petitioner and Respondents could negotiate any fees due to the Funds. On January 29, 2008, Colleran, O'Hara & Mills LLP informed Petitioner that Respondents were moving to confirm the award to judgment. Petition, Exhibit 4.

Because Petitioner was not served with proper notice of the arbitration and did not participate in the arbitration, and because there is no valid agreement to arbitrate, Petitioner now asks that this Court vacate the arbitration award pursuant to New York Civil Practice Law and Rules ("CPLR") §7511(b)(2)(ii) or, in the alternative, to vacate the arbitration award pursuant to CPLR §7511(b)(1)(i) because its rights were prejudiced by corruption, fraud, or misconduct in procuring the award.

2

ARGUMENT

POINT ONE

THE ARBITRATION AWARD SHOULD BE VACATED
BECAUSE THE PETITIONER WAS NOT SERVED WITH
PROPER NOTICE OF INTENTION TO ARBITRATE.
DID NOT PARTICIPATE IN THE ARBITRATION.
AND A VALID AGREEMENT TO ARBITRATE WAS NOT MADE

CPLR §7511(b)(2) provides that "[t]he award shall be vacated on the application of a party who neither participated in the arbitration nor was served with a notice of intention to arbitrate if the court finds that:...(ii) a valid agreement to arbitrate was not made." Here, Petitioner was not served with a proper notice of intention to arbitrate, did not participate in the arbitration, and the agreement underlying the award is invalid and does not bind Petitioner. As a result, the arbitration award should be vacated. Lurie v. Sobus, 289 A.D.2d 578 (2 Dept. 2001).

CPLR §7503(c) establishes that a demand for arbitration or notice of intention to arbitrate must state (in pertinent part), that "unless the party served applies to stay the arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with." CPLR §7503(c). In New York, it is "unequivocal[ ] that... the failure to serve proper notice of intention or demand to arbitrate in full compliance with CPLR 7503(c) renders such notice ineffective, and respondent cannot be said to have been properly served for purposes of CPLR 7511(b). Albert Bialek Assoc. Inc. v. Northwest-Atlantic Partners Inc., 251 A.D.2d 145. 146 (1 Dept. 1998)(citing Matter of Blamowski. 91 N.Y.2d 190 (N.Y. 1997)). No such demand for arbitration or notice of intention to arbitrate was ever served upon Petitioner. Although Petitioner was informed that Respondents were going to seek arbitration. it was not served with proper notice pursuant to CPLR §7503(c).

3

and this failure entitles Petitioner to have the arbitration award vacated pursuant to CPLR §7511(b)(2)(ii).

Furthermore, as established infra in Point II, Petitioner was reassured in discussions with Respondents' counsel that the arbitration was not going to take place and that Respondents were not going to seek a default award. As a result, it is uncontested that Petitioner did not attend the arbitration held on December 5, 2007.

With respect to CPLR §7511(b)(2)(ii), no valid agreement to arbitrate exists between the parties. The arbitration award was made pursuant to the provisions of the collective bargaining agreement that governs the Union. "Under New York law, '[o]ne who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority." Mason Tenders Dist. Council Welfare Fund v. All Union, Inc., 2002 WL 31115181, *3 (S.D.N.Y. 2002)(citing Ford v. Unity Hospital, 32 N.Y.2d 464 (1973)).   The agreement allegedly binding Petitioner to this CBA was signed by Ms. Fournier, a secretary at Symmetry. Ms. Fournier did not have the actual authority of Petitioner to legally bind Symmetry to any agreement.

Furthermore, there was no apparent authority provided that would lead the Respondents to believe Ms. Fournier was authorized to execute an agreement binding Petitioner to the collective bargaining agreement. "Apparent authority must be based on words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction; an agent cannot, though his own acts, cloak himself with apparent authority." Park Associates, LLC v. Northern Source, LLC, 2008 WL 496128, *1 (1 Dept. 2008)("Park Associates")(citing Hallock v. State of New York, 64 N.Y.2d 224 (1984)). "This rule holds especially true where a party fails to conduct a reasonable inquiry

4

into the scope of the purported agent's authority." _Id_. (citing Ford v. Unity Hosp., 32 N.Y.2d 510 (1973)). In this case, as in Park Associates, the documents upon which Respondents rely were provided to it by Ms. Fournier and Respondents took no steps to assure itself that Ms. Fournier had the authority to bind Symmetry to any Agreement or collective bargaining agreement. Because Ms. Fournier lacked any authority to execute the Agreement on Petitioner's behalf, there is no valid agreement to arbitrate between the parties.

In light of the fact that Petitioner was not properly served with a notice of arbitration or notice of intention to arbitrate pursuant to CPLR §7503(c), did not participate in the arbitration, and no valid agreement to arbitrate exists between the parties, the arbitration award should be vacated.

## POINT TWO

### THE ARBITRATION AWARD SHOULD BE VACATED BECAUSE PETITIONER'S RIGHTS WERE PREJUDICED BY CORRUPTION, FRAUD, OR MISCONDUCT IN RESPONDENTS' PROCUREMENT OF THE AWARD

In the alternative, the arbitration award should be vacated because the procurement of that award was caused by prejudicial corruption, fraud, or misconduct towards Petitioner. CPLR §7511(b)(1) states, in pertinent part:

> The award shall be vacated on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced by:
> (i)      corruption, fraud or misconduct in procuring the award.

As noted supra in Point One of this Memorandum, Petitioner was in contact with Respondents' counsel and was reassured that no arbitration was going to take place. As a result of this false statement, Petitioner did not seek to protect its rights by participating in the arbitration and demonstrating that the Agreement was invalidly procured. "Courts, with few exceptions, will not interfere with arbitration award in absence of fraud or misconduct." Temporary Commission of Investigation v. French, 68 A.D. 2d 681 (1 Dept. 1979). It is clear that the representation by Mr. Engel that arbitration would not be pursued and that a default award would not be taken is clearly prejudicial to Petitioner, since such representation resulted in Petitioner's failure to protect his rights or participate in the arbitration.

Petitioner was further misled by Mr. Engel's assurances that Respondents would not move to confirm the award as a judgment, as Exhibit 4 to the Petition demonstrates. As a result, the arbitration award ought to be vacated because Petitioner's rights were prejudiced by the statements and actions of Respondents' counsel. The arbitration award conferred upon Respondent was influenced by corruption, fraud or misconduct and should be vacated.

6

## CONCLUSION

It is clear that Petitioner was prejudiced in defending itself against the arbitration award. Proper notice was not supplied to Petitioner, the Respondents' counsel told Petitioner that no arbitration would take place, no default award would be taken, and no award would confirmed as a judgment. Given that the result of these factors was Petitioner's failure to participate in the arbitration and protect its rights, as well as to establish that the underlying Agreement was not validly procured by Respondents, this Court should use its inherent authority to vacate the arbitration award to preserve the integrity of the arbitration process and discourage fraud or misconduct to the detriment of a party to an arbitration. For the foregoing reasons it is respectfully requested that this Court vacate the arbitration award against Petitioner SYMMETRY PRODUCTS GROUP, along with such other and further relief as this Court may deem just and proper.

Respectfully submitted,
THOMAS M. LANCIA PLLC

Thomas M. Lancia, Esq.
Korinna M. Selstad, Esq.
*Attorneys for Petitioner Symmetry Products Group*
217 Broadway, Suite 608
New York, New York 10007
(212) 964-3157, Ex. 11

To:     Denis A. Engel
Colleran, O'Hara & Mills LLP
*Attorneys for Respondents IRON WORKS LOCAL UNION NO. 417, IRON WORKS LOCALS 40, 361 and 417 UNION SECURITY FUNDS*
1225 Franklin Avenue, Suite 450
Garden City, New York 11530

7



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
SYMMETRY PRODUCTS GROUP,                                  :        Index No.:
                                                         :
                                    Plaintiff,            :        103545/08
                                                         :
          -against-                                      :
                                                         :
IRON WORKS LOCAL UNION NO. 417, IRON                     :
WORKS LOCALS 40, 361 & 417 UNION                         :
SECURITY FUNDS,                                          :
                                    Defendant.           :
------------------------------------------------------------------------X

### NOTICE OF FILING OF PETITION FOR REMOVAL
### OF CAUSE TO THE UNITED STATES DISTRICT
### COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

TO:    Clerk of the Court New York County
       60 Centre Street
       New York, New York 10007

TO:    Thomas Lancia, Esq.
       217 Broadway, Suite 608
       New York, New York 10007

          PLEASE TAKE NOTICE that Defendants in the above captioned action,

originally pending in the Supreme Court of the State of New York, New York County,

Index No.: 103545/08, did, on the 31st day of March, 2008, file in the District Court of

the United States for the Southern District of New York, its Petition for Removal of

said cause to said District Court of the United States for the Southern District of New

York.

Dated:  Garden City, New York
        March 31, 2008

                                        Respectfully submitted,

                                        COLLERAN, O'HARA & MILLS L.L.P.
                                        Attorney for Defendants

                                        By _____
                                              DENIS A. ENGEL
                                        1225 Franklin Avenue, Suite 450
                                        Garden City, New York  11530
                                        (516) 248-5757

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------x
:
SYMMETRY PRODUCTS GROUP,         :       Index No.: 103545/08
:
                Petitioner     :
      -against-              :
:
                               :       AFFIDAVIT OF SERVICE
:
IRON WORKS LOCAL UNION NO. 417, IRON  :
WORKS LOCALS 40,361 & 417 UNION     :
SECURITY FUNDS,                 :
                Defendant.    :
-------------------------------------------------------------x

STATE OF NEW YORK)
             ) ss.:
COUNTY OF NASSAU )

      JOAN CANCELLIERI, being duly sworn, deposes and says:

      Deponent is not a party to this action, is over eighteen (18) years of age and resides in West Hempstead, New York 11552.

      On March 31, 2008, Deponent served the within **NOTICE OF FILING OF PETITION FOR REMOVAL OF CAUSE TO THE UNITED STATES DISTRICT COURT OF THE EASTERN DISTRICT OF NEW YORK** upon the following party in this action, at the address indicated below, which address has been designated by said party for that purpose by depositing a true copy of same enclosed in a post-paid addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

TO:    Tom Lancia, Esq.
       217 Broadway, Suite 608
       New York, New York 1007

                                    _Joan Cancellieri_
                                      JOAN CANCELLIERI

Sworn to before me this
31st day of March, 2008.

_Laura R. Harrington_
NOTARY PUBLIC
      LAURA A. HARRINGTON
    Notary Public, State of New York
        No. 01HA5036137
      Qualified in Nassau County
    Commission Expires 11 - 21 - 10